UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| RALPH KINGS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 2227 |
| | ) | |
| v. | ) | |
| | ) | Chief Judge Michael P. McCuskey |
| K. SMITH, | ) | Magistrate Judge David G. Bernthal |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |

### DEFENDANT SMITH'S ANSWERS & AFFIRMATIVE DEFENSE TO PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, KENT SMITH, by and through his attorney, MICHAEL W. CONDON of HERVAS, CONDON & BERSANI, P.C., and, in answer to Plaintiff's Complaint, states as follows:

1. The plaintiff, Ralph Kings, was a pretrial detainee at Jerome Combs Detention Center during the events described in this complaint.

**ANSWER:** Defendant admits the allegations contained in paragraph 1 of Plaintiff's Complaint.

2. The defendant, K. Smith, was a correctional lieutenant employed at Jerome Combs Detention Center (J.C.D.C.) during the events described in this complaint.

**ANSWER:** Defendant admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

3. Defendant Smith is sued in his individual and official capacities.

**ANSWER:** Defendant admits only that he is being sued in his individual capacity. Defendant affirmatively states the official capacity claim has been dismissed by the Court in its Merit Review order dated October 23, 2009.

4.      Defendant Smith has acted, and continue[s] to act, under color of state law at all times relevant to this complaint.

**ANSWER:**   Defendant admits the allegations contained in paragraph 4 of Plaintiff's Complaint.

## FACTS

5.      On April 12, 2008, at the start of the 2nd (3-11 p.m.) shift, the plaintiff, along with other detainees, was removed from Flex Pod and placed in Max C Pod, which only house "one man" cells, without explanation.

**ANSWER:**   Defendant admits only that Plaintiff was housed in Max C Pod on April 12, 2008. Defendant denies the remaining allegations contained in paragraph 5 of Plaintiff's Complaint.

6.      The Plaintiff was placed in cell Five (5) in Max C. Pod.

**ANSWER:**   Defendant admits the allegations contained in paragraph 6 of Plaintiff's Complaint.

7.      During the above transition the situation was only aggravated due to taunting and bullying on the part of the officers conducting this transition.

**ANSWER:**   Defendant states that he has knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 7 of Plaintiff's Complaint.

8.      Not long after being situated in Max C Pod, the plaintiff, along with other detainees, clogged their toilets causing an (flood) overflow of water unto the Pod.

**ANSWER:**   Defendant admits the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.      Shortly after "the flood", defendant Smith accompanied by several J.C.D.C. correctional officers entered Max C Pod with tazer guns in their hands, in response to the flood.

**ANSWER:** Defendant admits only that after the inmates flooded Max C Pod, he entered the Pod with a taser in his hand. Defendant denies the remaining allegations contained in paragraph 9 of Plaintiff's Complaint.

10. Upon seeing defendant Smith and the above mentioned C.O.'s enter the Pod, the plaintiff unclogged his toilet in order to stop the flood.

**ANSWER:** Defendant states that he has knowledge insufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 10 of Plaintiff's Complaint.

11. Immediately after entering the Pod, defendant Smith and C.O.'s, ran up the stairs, onto the top gallery, to the plaintiff's cell which was the nearest to stairs.

**ANSWER:** Defendant admits the allegations contained in paragraph 11 of Plaintiff's Complaint.

## MISUSE OF FORCE

12. Without warning, defendant Smith yelled, "Open cell 5", the plaintiff's cell door was then opened and defendant Smith shot the plaintiff, in torso, with tazer gun.

**ANSWER:** Defendant admits only that he shot Plaintiff with the taser during the incident. Defendant denies the remaining allegations contained in paragraph 12 of Plaintiff's Complaint.

13. There was never any warnings to lie down, sit on bed, put on handcuffs through the active "chuck hole", put on ankle cuffs through the active lower chuck hole or any of the usual procedures employed during a situation such as this.

**ANSWER:** Defendant denies the allegations contained in paragraph 13 of Plaintiff's Complaint.

14. After being shot, the plaintiff instantly fell to the floor, which was still covered in water from the flood, shaking, convulsing and moaning in pain.

**ANSWER:**   Defendant admits only that Plaintiff cried out after he was tased during the incident.  Defendant denies the remaining allegations contained in paragraph 14 of Plaintiff's Complaint.

15.   Suddenly the plaintiff felt a boot pressing down on his face with force, causing his face to be smashed between the boot and the water covered cement floor.

**ANSWER:**   Defendant denies the allegations contained in paragraph 15 of Plaintiff's Complaint.

16.   While the plaintiff was on that floor, still being shocked with tazer wires stuck to torso, he was handcuffed behind the back.

**ANSWER:**   Defendant admits only that Plaintiff was tased during the incident in Max C Pod on April 12, 2008, and that he was subsequently handcuffed behind his back.  Defendant denies the remaining allegations contained in paragraph 16 of Plaintiff's Complaint.

17.   Once handcuffed, the plaintiff felt numerous boots kick down onto his head, body and legs while the owners of the said boots, screamed, "stop resisting."

**ANSWER:**   Defendant denies the allegations contained in paragraph 17 of Plaintiff's Complaint.

18.   Finally the plaintiff was lifted off the ground by handcuffs.

**ANSWER:**   Defendant admits only that Plaintiff was lifted off the ground after he was handcuffed during the incident.  Defendant denies the remaining allegations contained in paragraph 18 of Plaintiff's Complaint.

19.   Then half pushed and half pulled out the cell and down the stairs soaking wet, with the tazer gun's wires still stuck to the plaintiff's torso.

**ANSWER:**   Defendant admits the allegations contained in paragraph 19 of Plaintiff's Complaint.

20.   As the plaintiff, defendant Smith and C.O.'s reached the door to exit the Pod, the plaintiff was shot with tazer gun in right shoulder, by unknown official, without provocation.

**ANSWER:** Defendant admits only that Plaintiff was tased again as he was being escorted out of Max C Pod because Plaintiff again became resistant and tried to turn away from the officers. Defendant denies the remaining allegations contained in paragraph 20 of Plaintiff's Complaint.

21. After being shot for the second time, the plaintiff instantly fell to the floor shaking, convulsing and moaning in pain.

**ANSWER:** Defendant admits only that Plaintiff fell to the floor after he was tased, but denies the remaining allegations contained in paragraph 21 of Plaintiff's Complaint.

22. While the plaintiff was on the floor, he was surrounded by C.O.'s and defendant Smith screaming "Get the F_ck off the floor."

**ANSWER:** Defendant denies the allegations contained in paragraph 22 of Plaintiff's Complaint.

23. While the plaintiff was on the floor all he could do was cry out "I can't get up."

**ANSWER:** Defendant denies the allegations contained in paragraph 23 of Plaintiff's Complaint.

24. Once the plaintiff was able to get to his feet, defendant Smith grabbed him by his neck and dragged him through multiple doors and hallways to a restraining device, reffered [sic] to as "the chair."

**ANSWER:** Defendant admits only that Plaintiff was taken from Max C Pod to the restraint chair after the incident. Defendant denies the remaining allegations contained in paragraph 24 of Plaintiff's Complaint.

25. The plaintiff was strapped down in "the chair", despite the fact he showed no signs of aggression and was very disoriented from being shocked repeatedly.

**ANSWER:** Defendant admits only that Plaintiff was secured in the restraint chair after the incident, but denies the remaining allegations contained in paragraph 25 of Plaintiff's Complaint.

26. In the chair, the plaintiff hands were still cuffed behind his back, legs were pulled underneath the chair by shackles, upper body was strapped down, lap and head was strapped down.

**ANSWER:** Defendant admits the allegations contained in paragraph 26 of Plaintiff's Complaint with the exception that Defendant denies that Plaintiff's head was strapped down in the chair.

27. Also in the chair, the plaintiff was still soaking wet with tazer gun needles and wires still hanging while stuck to his body.

**ANSWER:** Defendant admits the allegations contained in paragraph 27 of Plaintiff's Complaint.

28. The plaintiff was made to stay restrained in the chair for around 4 (four) hours straight.

**ANSWER:** Defendant admits the allegations contained in paragraph 28 of Plaintiff's Complaint.

29. While in the chair, the plaintiff experienced migraine, nauseus [sic], and difficulty breathing, which the chair only aggravated.

**ANSWER:** Defendant denies the allegations contained in paragraph 29 of Plaintiff's Complaint.

30. While in the chair, the plaintiff asked defendant Smith for medical attention, which defendant Smith denied to provide.

**ANSWER:** Defendant denies the allegations in paragraph 30 of Plaintiff's Complaint. Defendant affirmatively states that the Court previously dismissed Plaintiff's denial of medical treatment claim in its Merit Review order dated October 23, 2009.

31. Finally the plaintiff was unstrapped from the chair, stripped out of his clothes, given a gown, took back to Max C Pod, placed back in cell 5 under strip-cell status and denied medical attention after asking the Officials conducting the move back to Pod.

**ANSWER:** Defendant admits only that Plaintiff was subsequently removed from the restraint chair and returned to his cell, but denies the remaining allegations contained in paragraph 31 of Plaintiff's Complaint. Defendant affirmatively states that the Court previously dismissed Plaintiff's denial of medical treatment claim in its Merit Review order dated October 23, 2009.

32. During these events the plaintiff did not resist or threaten the defendant or any officials in any fashion or break any J.C.D.C. rules.

**ANSWER:** Defendant denies the allegations contained in paragraph 32 of Plaintiff's Complaint.

33. During these events the plaintiff received numerous bruises and abrasions to his arms, legs, torso, face and head.

**ANSWER:** Defendant denies the allegations contained in paragraph 33 of Plaintiff's Complaint.

## CLAIMS FOR RELIEF

34. The actions of defendant K. Smith in using physical force and unlawful restraint against the plaintiff without need or provocation, in failing to intervene to prevent the misuse of force and unlawful restraint, were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

**ANSWER:** Defendant denies the allegations contained in paragraph 34 of Plaintiff's Complaint.

WHEREFORE, the Defendant denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter a judgment in his favor and allow for the costs of defending this lawsuit.

**DEFENDANT DEMANDS TRIAL BY JURY**

Respectfully submitted,

**s/ Michael W. Condon**
MICHAEL W. CONDON, Atty Bar No.  06192071
*Attorney for the Defendant*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
Phone:  630-773-4774
Fax:  630-773-4851
mcondon@hcbattorneys.com

## FIRST AFFIRMATIVE DEFENSE

NOW COMES the Defendant, KENT SMITH, by and through his attorney, MICHAEL W. CONDON of HERVAS, CONDON & BERSANI, P.C., and for his First Affirmative Defense to Plaintiff's Complaint, Defendant states as follows:

The Defendant did not violate any clearly established constitutional right of which a reasonable person would have known, thus entitling him to qualified immunity.

WHEREFORE, the Defendant denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter a judgment in his favor and allow for the costs of defending this lawsuit.

Respectfully submitted,

**s/ Michael W. Condon**
Michael W. Condon, Atty Bar No. 6192071
*Attorney for the Defendant*
HERVAS, CONDON & BERSANI, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
630-773-4774
mcondon@hcbattorneys.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| RALPH KINGS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 2227 |
| | ) | |
| v. | ) | |
| | ) | Chief Judge Michael P. McCuskey |
| SMITH, | ) | Magistrate Judge David G. Bernthal |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 28, 2009, I filed the foregoing ***Defendant Smith's Answers & Affirmative Defense to Plaintiff's Complaint***, with the Clerk of the U.S. District Court for the Central District of Illinois, using the CM/ECF system, which will send notification of such filing to the CM/ECF participants; and I hereby certify that I have mailed with the United States Postal Service the aforementioned document to the following non-CM/ECF participant:

**TO:**    Mr. Ralph Kings – M02363
           Stateville Correctional Center
           INMATE L LEGAL MAIL
           P.O. Box 112
           Joliet, IL 60434
           ***Pro Se***

via certified mail by depositing a copy of same in the U.S. Mail at 333 Pierce Road, Itasca, Illinois on December 28, 2009, before 5:00 p.m. with the proper postage prepaid.

                                                                        **s/ Michael W. Condon**
                                                                    MICHAEL W. CONDON, Atty Bar No.06192071
                                                                    *Attorney for the Defendant*
                                                                    HERVAS, CONDON & BERSANI, P.C.
                                                                    333 Pierce Road, Suite 195
                                                                    Itasca, IL 60143-3156
                                                                    Phone:  630-773-4774
                                                                    Fax:  630-773-4851
                                                                    mcondon@hcbattorneys.com